UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at CHATTANOOGA

| | |
|---|---|
| WHOLESALE TAPE & SUPPLY CO., ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 1:04-CV-266 |
| v. ) | |
| ) | Judge Curtis L. Collier |
| ) | |
| ICODE, INC., ) | |
| ) | |
| Defendant. ) | |

## **M E M O R A N D U M**

Before the Court is Defendant iCode's ("Defendant") Second Renewed Motion to Compel Arbitration and to Dismiss or Stay Pending Arbitration (Court File No. 20). In deciding this motion, the Court considered Defendant's motion, the Declaration of Shivon Dosky ("Dosky Decl.") and supporting exhibits (Court File No. 21), Plaintiff Wholesale Tape & Supply Co.'s ("Plaintiff") response (Court File No. 22), and the parties' briefs and supporting documents relating to Defendant's prior motions on this issue (Court File Nos. 6, 7, 8, 12, 14, 15 and supporting exhibits). For the following reasons, the Court **FINDS** the parties have agreed to arbitrate this dispute, will **STAY** this cause of action pending arbitration pursuant to 9 U.S.C. § 3, and will **TRANSFER** this action to the Eastern District of Virginia, Alexandria Division pursuant to 28 U.S.C. § 1404(a) for further proceedings in accordance with this Memorandum and accompanying Order.

## I. RELEVANT FACTS AND PROCEDURAL HISTORY

The Court fully set out the facts relevant to this case in its prior Memorandum (Court File No. 9) on Defendant's first motion to compel arbitration (Court File No. 6). Defendant licensed "EVEREST" computer software it developed for small businesses to Plaintiff in Fall 2003 (*see* Court File No. 6 and supporting exhibits). This lawsuit arose after Plaintiff became displeased with the performance of the EVEREST software and demanded a refund, which Defendant refused to issue (*see* Court File No. 12 Exh. 1, Declaration of Ali Jani ("Jani Decl.") and supporting exhibits). The Court in its decision on Defendant's first motion to compel arbitration (*see* Court File Nos. 9, 10) determined Plaintiff affirmatively assented to be bound to a license agreement containing the following term ("arbitration clause"):

> Dispute Resolution. At the written request of either party, each party will appoint a knowledgeable, responsible representative to meet via telephone or in person and negotiate in good faith to resolve any controversy or claim between the parties. The parties agree that these negotiations will be conducted by non-lawyer, business representatives. Discussions and correspondence among the party representatives shall be treated as Confidential Information developed and exchanged for the purpose of settlement and shall not be admissible in any proceeding without the concurrence of each party. If the foregoing negotiations do not resolve the controversy or claim within thirty (30) days of the initial written request, then either party may then initiate binding arbitration proceedings before a single, independent arbitrator under the auspices of the American Arbitration Association's ("AAA") Commercial Arbitration Rules, which arbitration shall be the sole and exclusive method of determining unresolved controversies or claims between the parties. Venue for any arbitration hearings conducted hereunder shall be in Fairfax County, Virginia by an arbitrator selected by the AAA who is familiar with the computer software industry. . . The decision of the arbitrator shall be binding and conclusive on all parties involved, and judgment upon the arbitrator's decision may be entered in any court having competent jurisdiction. . .

(Court File No. 6, Exh. A to Declaration of Diana Hess ("Hess Decl.") ¶ 7.2).

Although the Court found Plaintiff was bound by this term in the license agreement, the Court denied Defendant's motion to compel arbitration because Plaintiff represented the conditions

precedent to arbitration, a written request and negotiations between non-lawyer business representatives, had not been met (*see* Court File No. 9). However, the Court stated it would "not foreclose the possibility of compelling arbitration at a later date if a party shows these procedures have been carried out" (*Id*. at 12). Defendant renewed its motion to compel arbitration, putting forth facts it argued showed the conditions precedent have been met (Court File No. 12). The Court again denied Defendant's motion to compel arbitration, finding the conditions precedent were not met because a written request for non-lawyer representatives to negotiate in good faith had not been made, as is required by the first sentence of the arbitration clause (*see* Court File Nos. 16, 17).

Since the Court issued that Order denying Defendant's renewed motion to compel arbitration, Defendant has taken steps it argues now have met the conditions precedent to the arbitration clause (Court File No. 20, *see also* Dosky Decl. and supporting exhibits). Defendant again requests the Court compel arbitration in Virginia and dismiss the lawsuit without prejudice to filing arbitration in Virginia, or in the alternative issue a stay of proceedings pending arbitration.

The facts Defendant asserts support a finding it has met the conditions precedent to arbitration are as follows. Defendant, through counsel, contacted Plaintiff's counsel by letter dated April 5, 2005 and, specifically invoking the language of the arbitration clause, requested Plaintiff appoint representatives to negotiate in good faith (Exh. A to Dosky Decl.). In this letter, Defendant appointed Shivon Dosky, Defendant's director of professional services, as its non-lawyer representative, and gave his availability for negotiations (*Id*.). Plaintiff's president, Michael Salley, responded to this letter via a phone call to Dosky, and the two discussed how to resolve this dispute, but were unsuccessful in reaching a resolution (Dosky Decl. ¶¶ 5-9). The negotiations concluded when Dosky sent a letter to Salley on May 6, 2005 setting forth its proposed business solution to the

3

dispute; Salley did not respond to this letter (*Id*. ¶ 10, Exh. B to *id*.).

Plaintiff does not dispute the above negotiations took place, but does dispute Defendant's assertion it negotiated in good faith to resolve the parties' conflict and asserts even if they were in good faith, they occurred too late to trigger the arbitration clause (*see* Court File No. 22, p. 2).

### III. DISCUSSION

#### A. Conditions Precedent to Arbitration

The Court in its Memorandum (Court File No. 9) on Defendant's prior motion to compel arbitration (Court File No. 6), set out the legal framework governing an arbitration agreement, the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-16. The Court already has determined the threshold issue in any motion to compel arbitration, whether the parties agreed to arbitrate, *see Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000), and found they did so agree, but only after certain pre-arbitration conditions precedent are met (*see* Court File Nos 9, 10). Thus the Court must determine whether the condition precedent to the arbitration clause has been met before the Court can proceed to the second issue, determining the scope of any agreement to arbitrate and whether this dispute falls within it. *See Stout,* 228 F.3d at 714.

The plain language of the "Dispute Resolution" term in the license agreement, quoted earlier in its entirety, allows either party to initiate binding arbitration after (1) either party makes a "written request;" (2) each party appoints a knowledgeable, responsible non-lawyer business representative; and (3) those non-lawyer business representatives meet via telephone or in person and negotiate in good faith to resolve any controversy or claim between the parties (Exh. A to Hess Decl., ¶ 7.2). After that,

> "[i]f the foregoing negotiations do not resolve the controversy or claim within thirty (30) days of the initial written request, <u>then</u> either party may then initiate binding

arbitration proceedings before a single, independent arbitrator. . .which arbitration shall be the sole and exclusive method of determining unresolved controversies or claims between the parties.

(*Id*.) (emphasis added).

The undisputed facts Defendant has presented show (1) Defendant made a written request; (2) each party appointed a knowledgeable, responsible non-lawyer business representative, with Dosky serving as Defendant's representative and Salley serving as Plaintiff's representative; (3) those representatives met via telephone and negotiated to resolve their dispute; and (4) these negotiations did not resolve the controversy or claim, and more than thirty days after the initial written request, Defendant has requested binding arbitration proceedings (*see* Dosky Decl. and Exh. A thereto). The primary issue before the Court, then, is Plaintiff's allegation Defendant did not engage in "good faith" negotiations.

Under Tennessee's adoption of the Uniform Commercial Code, which governs this contract,[1] good faith is defined as "honesty in fact in the conduct or transaction concerned." Tenn. Code Ann. § 47-1-201(19). Good faith imposes "an honest intention to abstain from taking any unconscientious advantage of another, even through the forms and technicalities of the law." *Lane v. John Deere Co.*, 767 S.W.2d 138, 140 (Tenn. 1989) (citations omitted).

Plaintiff asserts Defendant "steadfastly and completely resisted the idea of paying WTS any refund or even a fraction of a refund in order to resolve the controversy. Instead, [Defendant's] only purported attempt to resolve the controversy was to offer [Plaintiff] additional services for which [Plaintiff] would have to pay [Defendant] additional sums of money" (Court File No. 22 p. 2).

---

[1] The Court decided in its first ruling on the arbitration issue the contract in this lawsuit is governed by Tennessee law and its adoption of the Uniform Commercial Code (*see* Court File No. 9, pp. 7-8).

5

Plaintiff argues Defendant's refusal to offer a partial refund and request for additional payments as part of its proposed solution did not constitute "good faith" negotiations (*Id.* p. 3). Defendant responds its failure to offer the entire relief Plaintiff seeks in this lawsuit, *i.e.*, a full refund of the purchase price, cannot be characterized as a lack of "good faith" in negotiating a resolution of the dispute (Court File No. 24, pp. 1-2). Under Tennessee's good faith rules, the Court cannot find Defendant's negotiations with Plaintiff were not in good faith. Using Plaintiff's proposed rule, a party that does not enter negotiations willing to give the other party everything he asks for (here, a full or partial refund) is not negotiating in good faith. Plaintiff has not shown any dishonesty or unconscientious taking advantage by Defendant in these negotiations. Therefore, Plaintiff's argument these negotiations were not conducted in good faith must fail.

In accordance with its finding Defendant negotiated in good faith, the Court finds the parties have now met all conditions precedent to the arbitration clause.

### B. Waiver

The final issue related to the threshold question of whether the parties agreed to arbitrate this dispute is whether Defendant waived its right to arbitration. An agreement to arbitrate may be "waived by the actions of a party which are completely inconsistent with any reliance thereon." *Gen. Star Nat'l Ins. Co. v. Administratia Asigurarilor de Stat*, 289 F.3d 434, 438 (6th Cir. 2002) (quoting *Germany v. River Terminal Ry. Co.*, 477 F.2d 546, 547 (6th Cir. 1973) (per curiam)). There is a strong presumption in favor of arbitration under the FAA, so waiver of the right to arbitration is not to be lightly inferred. *O.J. Distrib., Inc. v. Hornell Brewing Co.*, 340 F.3d 345, 355 (6th Cir. 2003).

The United States Court of Appeals for the Sixth Circuit ("Sixth Circuit") recently has ruled on several cases involving the issue of waiver of a right to arbitrate. In *General Star*, the court

6

found the defendant did not assert any right to arbitrate until seventeen months after receiving actual notice of the lawsuit, when it objected to the district court's entry of default judgment against it. The court held since the defendant "remained idle while [the plaintiff] incurred the costs associated with this action," it had waived any right to arbitrate. 289 F.3d at 438. In *O.J. Distributing*, the court noted, "while there is a strong presumption in favor of enforcing arbitration rights, both this Court and our sister circuits have been willing to find under appropriate circumstances that a party has waived its right to arbitrate by virtue of its actions in delaying the right to the point of prejudicing the other party." 340 F.3d at 357 (citing *Gen. Star*, 289 F.3d at 438). The *O.J. Distributing* court found the defendant waived its right to arbitrate by engaging with the plaintiff in thirteen months of pre-litigation negotiations and two months of negotiations after litigation was filed, during all of which the defendant denied "the existence of the Agreement and, therefore, the arbitration provision." *Id.* The court held, "Defendant slept on its [arbitration] rights for approximately fifteen months . . . while Plaintiff incurred costs associated with the matter and was prejudiced as a result." *Id.* at 358. In *Highlands Wellmont Health Network*, by contrast, the Sixth Circuit overturned a district court's finding of waiver of the right to arbitrate where the defendant in its pre-litigation dispute resolution discussions declined "at [that] point" to agree to arbitration, but then immediately invoked the arbitration clause upon the commencement of litigation by filing a motion to compel arbitration and stay the proceedings. 350 F.3d at 574.

Plaintiff argues "if [Defendant] had wished to assert a right to arbitration, it should have triggered the arbitration clause in February of 2004. By waiting for more than a year to attempt to trigger the arbitration clause, [Defendant] evidenced an intent to waive any right to insist upon arbitration " (Court File No. 22, p. 4) (emphasis in original).

7

Defendant did not make a written request for non-lawyer representatives to negotiate until April 5, 2005. However, Defendant did assert a right to arbitrate as early as March 17, 2004, several months before Plaintiff filed this lawsuit, in its reply to the first letter from Plaintiff's counsel threatening a lawsuit (*see* Exh. E to Jani Decl.). Defendant in that reply stated,

> Your letter further states that your client will pursue its remedies at law if it does not receive a full refund and your letter detailed the potential causes of action. iCode does not take threats of litigation lightly and we are fully prepared to vigorously defend any lawsuit that you might file against us because we believe that under the circumstances, there is no merit to the legal action threatened in your letter. If you client elects to proceed with litigation nevertheless, such action will be based on the applicable License Agreement. Notwithstanding your points about the application of the Tennessee Consumer Protection Act, the License Agreement provides for exclusive venue for resolution of disputes in the Commonwealth of Virginia though [sic] binding arbitration . . ."

(*Id.*). Defendant then reasserted a right to arbitration in its notice of removal and all subsequent court filings (*see* Court File Nos. 1, 6, 8, 12, 18, 20, 24). The Court finds these facts are much more similar to those in *Highlands Wellmont Health Network* than those in *General Star* or *O.J. Distributing*. While Defendant's original actions may not have been sufficient to meet the conditions precedent to the arbitration clause, they certainly do not evidence any intent to waive the right to arbitrate once those conditions were properly met, or excessive delay that required Plaintiff to incur costs or prejudice.

### C. Scope of the Agreement

Finding the parties fulfilled all conditions precedent to their agreement to arbitrate and no waiver of the arbitration right took place, the Court must now determine the scope of the agreement to arbitrate, and whether the present dispute falls within it. *See Stout,* 228 F.3d at 714. The arbitration clause in this case is extremely broad, including "any controversy or claim between the parties" (Exh. A to Hess Decl. ¶ 7.2). "Where, as here, the arbitration clause is broad, only an

8

express provision excluding a specific dispute, or the most forceful evidence of a purpose to exclude the claim from arbitration, will remove the dispute from consideration by the arbitrators." *Masco Corp. v. Zurich Am. Ins. Co.*, 382 F.3d 624, 627 (6th Cir. 2004) (quoting *Highlands Wellmont Health Network*, 350 F.3d at 577) (internal quotation marks omitted).

Any doubts regarding the scope of the clause should be resolved in favor of submitting a particular dispute to arbitration. *AT&T Techs.*, 475 U.S. at 650; *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24-25; *Morrison*, 317 F.3d at 675. Defendant has not, in any of its briefs on this issue, put forth any arguments why this dispute does not fall within the scope of the arbitration clause, or the parties intended to exclude it from arbitration (*see* Court File Nos. 7, 14, 22). Further, this arbitration clause does not limit the types of disputes subject to its reach to those based upon the license agreement, therefore the fact Plaintiff's claims are brought pursuant to the Tennessee Consumer Protection Act ("TCPA") rather than under contract law is of no import to this analysis. Accordingly, because under the plain language of the arbitration clause, the underlying dispute in this action is a "controversy or claim between the parties," the dispute falls within the scope of the arbitration agreement to which the parties consented (Exh. A to Hess Decl. ¶ 7.2).

### D. Enforceability of Arbitration Clause

The Court must address one final issue before it can make a decision regarding the arbitrability of the issues before it. Plaintiff in its response to Defendant's present motion reiterates an argument it presented in earlier briefs (*see* Court File Nos. 7, 14), that is, regardless of the Court's decision on the arbitration clause's application to the present dispute, the clause is invalid and unenforceable, therefore arbitration must not be compelled (Court File No. 22 at 4-5). Plaintiff bases this argument on a section of the TCPA, under which it brings its claims in this suit, that

9

states,

> Any provision in any agreement or stipulation, verbal or written, restricting jurisdiction or venue to a forum outside this state or requiring the application of the laws of another state with respect to any claim arising under or relating to the Tennessee Consumer Protection Act and related acts set forth in this title is void as a matter of public policy.

Tenn. Code Ann. § 47-18-113(b). Plaintiff argues because the arbitration clause in its contract with Defendant contains a provision limiting venue for arbitration hearings to Fairfax County, Virginia, the TCPA renders the entire arbitration clause void as a matter of public policy (*see* Exh. A to Hess Decl. ¶ 7.2).

The plain language of this statute voids as a matter of public policy "[a]ny *provision* in any agreement or stipulation," thus if it were applied to the license agreement, it would void solely venue provision, not the arbitration clause in its entirety. Second, while the language of this statute would at first seem to, as Plaintiff argues, void at least the venue section of the arbitration clause, in at least one case brought under the TCPA, a Tennessee court has upheld a forum-selection provision in an arbitration clause calling for non-Tennessee fora as valid under Tennessee law. *See Tennsonita, Inc. v. Cucos, Inc.*, 1991 WL 66993 (Tenn. Ct. App. May 2, 1991).[2] Further, a Tennessee federal court has enforced a forum-selection clause in an action brought under the TCPA. *See Long v. Dart Int'l, Inc.*, 173 F. Supp. 2d 774, 779 (W.D. Tenn. 2001).

Additionally, Tennessee courts have limited the scope of this section of the TCPA, finding

---

[2]The Court is aware of a recent case in which the Sixth Circuit applied Tenn. Code Ann. § 47-18-113 in refusing to enforce a contract's Ohio choice-of-law provision, applying Tennessee law instead. *See Rutherford Farmers Coop. v. MTD Consumer Group, Inc.*, 124 Fed. Appx. 918, n.2 (6th Cir. 2005). However, that case did not involve an arbitration agreement, therefore the FAA was not implicated, and because the parties in that case agreed Tennessee law should apply, the Sixth Circuit did not engage in any analysis about the applicability of § 47-18-113.

10

it preempted by the FAA. Although Tennessee and federal courts have not examined the specific subsection of the TCPA to which Plaintiff refers, in *Pyburn v. Bill Heard Chevrolet*, the Tennessee Court of Appeals held an arbitration clause was enforceable even though it violated another subsection of § 47-18-113, which requires a judicial forum for the resolution of TCPA claims. 63 S.W.3d 351 (Tenn. Ct. App. 2001). The court ruled this section of the TCPA was in direct conflict with United States Supreme Court decisions prohibiting states from interfering with Congress's intent, evident in the FAA, of requiring enforcement of arbitration agreements. *Id.* at 361 (*citing Perry v. Thomas*, 482 U.S. 483, 491, 107 S. Ct. 2520, 2526, 96 L. Ed. 2d 426 (1987) (California statute requiring litigants be provided a judicial forum for resolving wage disputes "must give way" to Congress' intent to provide for enforcement of arbitration agreements with the FAA)). The Tennessee Court of Appeals additionally cited *Southland Corp. v. Keating*, 465 U.S. 1, 104 S. Ct. 852, 79 L. Ed. 2d 1 (1984), in which the Supreme Court held another California law requiring judicial consideration of claims brought pursuant to that statute was preempted by the FAA. *Pyburn*, 63 S.W.3d at 361. In *Keating*, the Supreme Court noted "in enacting § 2 of the federal Act, Congress declared a national policy favoring arbitration and withdrew the power of the states to require a judicial forum for the resolution of claims which the contracting parties agreed to resolve by arbitration." 465 U.S. at 10. Following these Supreme Court precedents, the Tennessee Court of Appeals found "[t]o the extent the TCPA prohibits arbitration because it is an unlawful waiver of Plaintiff's right to proceed in a judicial forum, the TCPA is preempted by the FAA." *Id.* at 362.

The Tennessee Supreme Court has noted, "the purpose of the FAA is 'to ensure the enforceability, **according to their terms**, of private agreements to arbitrate.'" *Frizzell Constr. Co. v. Gatlinburg, L.L.C.*, 9 S.W.3d 79, 83-84 (Tenn. 1999) (quoting *Mastrobuono v. Shearson Lehman*

11

*Hutton, Inc.*, 514 U.S. 52, 57, 131 L. Ed. 2d 76, 115 S. Ct. 1212 (1995); *Volt Info. Sciences, Inc. v. Board of Trustees*, 489 U.S. 468, 476, 103 L. Ed. 2d 488, 109 S. Ct. 1248 (1989)) (emphasis added).

The Court hereby finds, by extension of *Pyburn*, the provision in the TCPA voiding "[a]ny provision in any agreement or stipulation, verbal or written, restricting jurisdiction or venue to a forum outside this state or requiring the application of the laws of another state with respect to any claim arising under or relating to the Tennessee Consumer Protection Act" is preempted by the FAA to the extent it attempts to override the terms of otherwise valid private agreements to arbitrate.

### E. Stay and Transfer of Case

Defendant requests the Court dismiss this case without prejudice to pursuing it in arbitration in Fairfax County, Virginia, or, in the alternative, issue a stay of proceedings. Plaintiff requests the Court stay proceedings in the case until arbitration has been conducted. Under 9 U.S.C. § 3, the Court, "upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement . . ." As analyzed above, Plaintiff's claims constitute arbitrable disputes under the broad language of the arbitration agreement. Thus, pursuant to 9 U.S.C. § 3, the Court deems it necessary and appropriate to stay Plaintiff's action against Defendant pending arbitration.

Somewhat complicating the issue in this case, however, is the fact the arbitration clause contains a venue-selection provision which states, "[v]enue for any arbitration hearings conducted hereunder shall be in Fairfax County, Virginia . . ." (Exh. A to Hess Decl., ¶ 7.2). While, under 9 U.S.C. § 3, the Court may stay this action pending arbitration, under 9 U.S.C. § 4, the Court may not compel the parties to arbitrate outside the Eastern District of Tennessee. *See Inland Bulk*

*Transfer Co. v. Cummins Engine Co.*, 332 F.3d 1007, 1018 (6th Cir. 2003) (*quoting Mgmt. Recruiters Int'l, Inc. v. Bloor*, 129 F.3d 851, 854 (6th Cir. 1997) ("where the parties have agreed to arbitrate in a particular forum, only a district court in that forum has jurisdiction to compel arbitration pursuant to Section 4")). Therefore, the Court must decide whether the venue-selection provision requires this arbitration to take place outside the Eastern District of Tennessee, preventing the Court from issuing an Order compelling arbitration.

Plaintiff argues, based on Tennessee law, the venue-selection provision is unenforceable because it is part of a contract of adhesion (Court File No. 7 at 11). However, this Court is directed in a diversity breach of contract case removed from state court, such as this one, to use federal law, particularly 28 U.S.C. § 1404(a), rather than state law, in deciding the validity of a venue-selection clause.[3] *See Kerobo v. Southwestern Clean Fuels, Corp.*, 285 F.3d 531, 538 (6th Cir. 2002) (*citing Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29, 101 L. Ed. 2d 22, 108 S. Ct. 2239 (1988)).

---

[3] The Court would note the venue-selection provision also is valid under Tennessee law. Presuming this provision is part of a contract of adhesion (an assertion Defendant does not dispute), in Tennessee, a contract of adhesion remains enforceable unless "the terms of the contract are beyond the reasonable expectations of an ordinary person, or oppressive or unconscionable." *Buraczynski v. Eyring*, 919 S.W.2d 314, 320 (Tenn. 1996); *accord. Taylor v. Butler*, 142 S.W.3d 277, 287 (Tenn. 2004). Tennessee courts will not enforce an adhesion contract that is "oppressive to the weaker party or which serve to limit the obligations and liability of the stronger party." *Id.* Defendant notes the arbitration provision is equally binding on both parties and neither party gains an unequal advantage in the arbitration process itself (Court File No. 8 at 5). However, Defendant does not note one important advantage it gains with the venue provision, that is, arbitration in its choice of forum, which is presumably a convenient one.

While the forum mandated by the venue provision is more convenient for Defendant, a Virginia corporation whose offices presumably are located in its forum of choice, Fairfax County, Virginia, the Court cannot find such a forum selection clause is "beyond the reasonable expectations of an ordinary person, or oppressive or unconscionable." *Id.* Plaintiff has neither argued nor put forth any evidence it will be financially or strained or harmed in its business operations by being forced to arbitrate in a forum outside the Eastern District of Tennessee. Therefore, under Tennessee law the venue-selection provision is not unenforceable.

13

Forum selection clauses are presumed valid and should be enforced unless they would be unreasonable and unjust, or unless the plaintiff demonstrates such a clause is invalid for such reasons as fraud and overreaching. *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 12, 92 S. Ct. 1907, 32 L. Ed. 2d 513 (1972). Plaintiff does not allege any fraud or overreaching by Defendant. Because Defendant, and presumably all of its witnesses and evidence, is located in Fairfax County, Virginia, while Plaintiff, as well as presumably all of its witnesses and evidence, is located in Hamilton County, Tennessee, the equities are balanced as far as having the case arbitrated in either forum. Considering the circumstances under which Plaintiff and Defendant, both corporations managed by businesspeople, entered into the venue-selection provision in the license agreement, as well as the effects the provision would have on the parties in the present litigation, the Court finds no evidence in the record requiring a conclusion enforcement of the venue-selection provision would be unreasonable or unjust. Accordingly, the Court will enforce the venue-selection provision and finds arbitration must be conducted in Fairfax County, Virginia in accordance with that provision.

As noted above, the Court may not compel arbitration in Fairfax County, Virginia, as it is outside the Eastern District of Tennessee. However, the Court has discretion under 28 U.S.C. § 1404(a) to transfer venue for the convenience of parties and witnesses, and in the interests of justice. In *Stewart Organization*, the United States Supreme Court noted a transfer of venue decision requires

> the district court to weigh in the balance a number of case-specific factors. The presence of a forum-selection clause such as the parties entered into in this case will be a significant factor that figures centrally in the district court's calculus. [The district court may also be required to] address such issues as the convenience of a [particular] forum given the parties' expressed preference for that venue, and the fairness of transfer in light of the forum-selection clause and the parties' relative bargaining power . . . The district court also must weigh in the balance the convenience of the witnesses and those public-interest factors of systemic integrity

14

and fairness that, in addition to private concerns, come under the heading of "the interest of justice."

487 U.S. at 29-30.

In weighing these factors, courts have noted a plaintiff's choice of forum should rarely be disturbed unless the balance is strongly in favor of the defendants. *See, e.g., Catalano v. BRI, Inc.*, 724 F. Supp. 1580 (E.D. Mich. 1989); *Simmons Ford, Inc. v. Consumers Union of United States*, 490 F. Supp. 106 (W.D. Mich. 1980). However, where a valid forum-selection clause exists, that clause must be considered in weighing the relevant factors, and the burden of persuasion shifts to the party opposing enforcement of the forum-selection clause. *See Stewart Org.*, 487 U.S. at 29-30. Such clauses should be enforced unless it would be unreasonable or unjust to do so. *Id.*

Considering all the required factors together, the Court finds the convenience of the parties and the interests of justice require transfer of this matter under 28 U.S.C. § 1404(a). As noted above, since the witnesses and evidence likely are split between Plaintiff's location and Defendant's location, the equities favor neither forum. Weighing heavily in the Court's analysis is the valid forum-selection provision which constitutes a private agreement on venue. *See id.* Neither party has presented arguments or evidence regarding the other factors the Court must consider in making this determination. Therefore, after balancing the factors in 28 U.S.C. § 1404(a), the Court will transfer this matter for arbitration in Fairfax County, Virginia to the Eastern District of Virginia, Alexandria Division.

## IV.  CONCLUSION

The Court hereby **FINDS** the condition precedent to the arbitration clause has been met, this dispute falls within the scope of the parties' agreement to arbitrate, and the arbitration agreement

15

is not void under Tennessee law.  Therefore, the Court will **STAY** this cause of action pending arbitration pursuant to 9 U.S.C. §3, and will **TRANSFER** this action to the Eastern District of Virginia, Alexandria Division pursuant to 28 U.S.C. § 1404(a) for further proceedings in accordance with this Memorandum and accompanying Order.

      An Order shall enter.

**/s/**
**CURTIS L. COLLIER**
**CHIEF UNITED STATES DISTRICT JUDGE**